UNITED STATED BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re:                                       )
                                             )
**LISA KAY BRUMFIEL,**                       )   Case No. 11-39881 HRT
                                             )   Chapter 7
**Debtor.**                                  )
                                             )

## ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT

   This matter came before the Court on the Motion to Approve Settlement Agreement (the "Settlement Motion," docket #72), filed jointly by David E. Lewis, Chapter 7 Trustee (the "Trustee"), and U.S. Bank, N.A., Successor Trustee to Bank of America, N.A., as Successor Trustee to LaSalle Bank, N.A., as Trustee for the Holders of the Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FF1 ("U.S. Bank"); and the Objections thereto filed by the Debtor, Lisa Kay Brumfiel (docket #82), and by Creditor Terry Brumfiel (docket #85).  Following an evidentiary hearing on January 16, 2015, the Court took the matter under advisement.  The Court is now prepared to rule, and hereby finds and concludes as follows.

### BACKGROUND

   On or about November 14, 2006, the Debtor signed (1) an Adjustable Rate Note (the "Note"), promising to pay the Lender, First Franklin a Division of National City Bank (the "Original Lender"), the principal amount of $169,350.00, plus interest, and (2) a Deed of Trust (the "Deed of Trust") securing the Note and encumbering real property described as follows: Lot 40, Block 3, Brookvale Subdivision Filing No. 2, County of Arapahoe, State of Colorado Commonly Known As: 1499 S. Jasper Street, Aurora, CO 80017 (the "Property").  The Deed of Trust identifies the Debtor as the Borrower, the Original Lender as Lender, the Public Trustee of Arapahoe County, Colorado as Trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and Lender's successors and assigns, and as beneficiary.

   The Debtor made payments on the Note and Deed of Trust until the summer of 2010, after which time the Debtor stopped making payments.  She admits that her failure to make the payments constituted a default under the Note and Deed of Trust, but she asserts that her default was justified by an alleged improper assignment of the Note and Deed of Trust from the Original Lender to Bank of America and/or to U.S. Bank.  In October of 2011, U.S. Bank filed a non-judicial foreclosure action against the Property in the Arapahoe County, Colorado District Court (the "State Court") under Colorado Rule of Civil Procedure 120 (the "Rule 120 Proceeding").

   On December 30, 2011, the Debtor filed her voluntary Chapter 7 bankruptcy petition, staying the Rule 120 Proceeding.  Along with her petition, the Debtor filed her Schedules A through J.  The Debtor's Schedule B asks the Debtor to list "Other contingent and unliquidated

ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT
Case No. 11-39881 HRT

claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." The Debtor checked "none." The Debtor's Schedule D (creditors holding secured claims) lists Bank of America as holding both a first and second mortgage secured by the Property. The Debtor's Statement of Financial Affairs, filed shortly after her petition date, lists the Rule 120 Proceeding in response to Question 4 (suits and administrative proceedings). The Debtor's Schedules and Statement of Financial Affairs, prepared with the assistance of counsel and signed under penalty of perjury, do not disclose the existence of any claims or potential claims arising out of the alleged improper assignment of the Note and Deed of Trust, Bank of America or U.S. Bank's attempts to collect payments under the Note and Deed of Trust, or U.S. Bank's institution of the Rule 120 Proceeding. The Debtor's case was administered as a no-asset case. The Debtor received her Chapter 7 discharge, and her case was closed in due course on May 29, 2012. At the closing of the Debtor's case, all nonexempt property listed on the Debtor's schedules and not administered by the Debtor's Chapter 7 Trustee was deemed abandoned to the Debtor, pursuant to 11 U.S.C. § 554(c).

Following the closing of the Debtor's case, the Rule 120 Proceeding went forward in the State Court. On October 12, 2012, the Debtor brought an action in the U.S. District Court for the District of Colorado, case number 2012-CV-02716-WJM-MEH (the "Federal Action"), naming as defendants U.S. Bank, the law firm of Castle Stawiarski, which had represented U.S. Bank in the Rule 120 Proceeding, and attorney Larry Castle, principal of the Castle Stawiarski law firm. In the Federal Action, Ms. Brumfiel asserted claims for civil rights deprivations under 42 U.S.C. §§ 1983, 1985, and 1988, and claims for wrongful foreclosure, fraud, common law conspiracy, and intentional and negligent infliction of emotional distress. Ms. Brumfiel also sought to enjoin the Rule 120 Proceeding. The U.S. District Court granted an Interim Preliminary Injunction against the execution of the Rule 120 Proceeding, and U.S. Bank subsequently consented to a permanent injunction against the use of the Rule 120 process against the Debtor, electing to proceed instead with a judicial foreclosure proceeding under Colorado Rule of Civil Procedure 105 (a "Rule 105 Proceeding").

On May 24, 2013, U.S. Bank brought its Rule 105 Proceeding against the Debtor in the State Court, case number 2013-CV-825. The Debtor removed the Rule 105 Proceeding to the U.S. District Court, based on the pending Federal Action, but that court remanded the Rule 105 Proceeding back to the State Court.

On October 2, 2013, the U.S. District Court dismissed the Federal Action, finding that the Debtor was not a party in interest with respect to her damages claims, which had not been scheduled in her bankruptcy case and therefore had not been abandoned to the Debtor when her case was closed. The Debtor filed a motion to reconsider, which was denied. The Debtor subsequently filed an appeal to the Tenth Circuit Court of Appeals, which appeal apparently remains pending.

ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT
Case No. 11-39881 HRT

Meanwhile, the Rule 105 Proceeding went forward in the State Court. On January 14, 2014, the State Court entered an order dismissing the monetary damages claims that the Debtor had asserted in the Rule 105 Proceeding. The State Court agreed with the U.S. District Court that the Debtor's claims remained property of her bankruptcy estate, and the Debtor herself lacked standing to bring them. The State Court further discussed the merits of each of the Debtor's claims – fraud and misrepresentation, civil conspiracy, violations of the fair debt collection practices act, and intentional infliction of emotional distress – finding dismissal to be appropriate as to each claim, either for failure to state a claim or for failure to bring the claim within the applicable statute of limitations.

After the State Court entered its January 14, 2014, Order, and after that court denied the Debtor's motion for reconsideration, the Debtor filed a motion in this Court seeking to reopen her bankruptcy case. In the motion to reopen, filed with the assistance of counsel, the Debtor stated that the purpose of reopening the case was to avoid liens on the Property. The Debtor did not mention any of the lawsuits regarding the Property. This Court granted the Debtor's motion, the Debtor's case was reopened on March 4, 2014, and certain liens on the Property were avoided.

On May 23, 2014, the Debtor, through counsel, filed a motion seeking reappointment of her Chapter 7 Trustee, asserting as grounds therefor that counsel had negotiated the Trustee's abandonment of the Debtor's damages claims. The Court reappointed the Trustee, and the Trustee subsequently filed a Notice Pursuant to Bankruptcy Rule 6007(a) of Trustee's Intent to Abandon (docket #58), regarding "any claim for avoidance, recovery, fraud, or other basis, asserted by the debtor against purported lienholders, or their successors, assigns or affiliates claiming an interest in the real property owned by the debtor and claimed as her homestead, whether currently asserted or asserted at some future date." U.S. Bank timely filed an objection to the Trustee's Notice.

U.S. Bank and the Trustee negotiated a Settlement Agreement dated August 1, 2014 (the "Settlement Agreement"), which includes the following provisions:

- U.S. Bank will pay the Trustee the Settlement Amount of $10,000.00;
- Upon payment of the Settlement Amount, any Claims the Debtor's estate may have in connection with the Debtor's interests in the Property will be transferred to U.S. Bank; and
- U.S. Bank will be permitted to file a general unsecured claim in the Debtor's case based on any deficiency resulting from the foreclosure sale of the Property.

U.S. Bank and the Trustee filed their Settlement Motion, seeking approval of the Settlement Agreement, on August 4, 2014. The Debtor timely filed an objection, as did her father, Terry Brumfiel (the "Objecting Creditor").

ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT
Case No. 11-39881 HRT

After the parties entered into the Settlement Agreement, this Court entered its Order on Motion for Relief from Stay (docket #78), which held that the automatic stay did not apply to the Rule 105 Proceeding or to U.S. Bank's efforts to enforce its rights against the Property, and in the alternative, relief from stay was appropriate. The Debtor filed a motion for reconsideration, which this Court denied (docket #95). The Debtor did not pursue an appeal of this Court's Orders. The Rule 105 Proceeding went forward, the State Court entered its judgment for foreclosure, a foreclosure sale was held, U.S. Bank purchased the Property at the sale and received a confirmation deed, and the Debtor was evicted from the Property. The Debtor pursued appeals of all orders entered against her by the State Court.

This Court set the Settlement Motion for an evidentiary hearing to be held on November 16, 2014. The Debtor filed a motion to continue that hearing date, on the grounds that she had recently undergone major surgery. Over the objection of U.S. Bank, the Court continued the hearing until January 16, 2015. On that date, the Court heard the testimony of the Trustee and the testimony of the Debtor, and the arguments of the parties. Following the conclusion of the hearing, the Court took the matter under advisement.

## DISCUSSION

In determining whether the Settlement Agreement should be approved, the Court has considered the four factors discussed in *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997), as well as other arguments raised by the Debtor and Objecting Creditor. The Court will discuss each below.

### A. *Kopexa Realty* factors

As set forth in *Kopexa Realty*, the Trustee has the burden of proving that the Settlement Agreement should be approved based the following factors:

1. the probable success of the underlying litigation on the merits;
2. the possible difficulty in collection of a judgment;
3. the complexity and expense of the litigation; and
4. the interests of creditors in deference to their reasonable views.

213 B.R. at 1022. The Court will discuss each factor in turn.

### 1. Probable Success of Underlying Litigation

The Trustee testified that he saw no merit in the Debtor's claims related to the Property, including the alleged improper assignment of the Note and Deed of Trust from the Original Lender to Bank of America, and then to U.S. Bank, and the alleged improper foreclosure

ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT
Case No. 11-39881 HRT

activities by U.S. Bank. In the Trustee's opinion, the amount U.S. Bank proposed to pay represented the "nuisance value" of the claims.

In contrast, the Debtor testified that in her opinion, the claims have substantial value. She acknowledged that she is not an attorney, but she noted that she had experienced some degree of success prosecuting the claims to date, including obtaining temporary injunctive relief against the continuation of the Rule 120 Proceeding and obtaining a report from a forensic document examiner that supported her conclusion that she was the victim of fraud.

The Court has considered the testimony and the nature of the Debtor's claims and finds that the claims have a low probability of success. The Debtor's claims are based on the premise that U.S. Bank is not the proper party in interest to receive payments due under the Note and Deed of Trust and to pursue foreclosure of the Property. As a matter of Colorado law, the party that holds the original note is entitled to enforce the note and corresponding security interest. *Stetler v. Scherrer*, 226 P. 858, 859 (Colo. 1924); Colo Rev. Stat. §§ 4-3-301, 4-1-201(20). Thus, in this case, if U.S. Bank had possession of the Original Note, it was entitled to enforce the Note and Deed of Trust. In the Rule 105 Proceeding, the State Court found that U.S. Bank was in possession of the Original Note, based on the State Court's own review of that document. The State Court found that U.S. Bank had standing to pursue foreclosure, and allowed the foreclosure of the Property to proceed. The Debtor is pursuing appeals of the State Court's decisions, but the State Court's findings of fact are entitled to some deference on appeal. *See People v. Pitts*, 13 P.3d 1218, 1221 (Colo. 2000). And, if the Debtor is unable to prevail on her appeals in the Colorado courts, no federal court can provide relief. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).[1] Given the result of the proceedings in the State Court, this Court cannot find that the Debtor's claims have any probability of success.

Even if this Court were to write on a blank slate, without the prior findings of the State Court, the Court could not find that the Debtor's claims have a probability of success. Without conducting a "mini-trial" on the issue, *see Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997), the Court has reviewed the evidence before the Court in order to inform the Court's decision on the merits of the claims. The Court has reviewed the Debtor's Exhibit I, the report of Gary

---

[1] In *In re Miller*, 666 F.3d 1255 (10th Cir. 2012), the Tenth Circuit Court of Appeals held that neither the *Rooker-Feldman* doctrine nor the doctrine of collateral estoppel (issue preclusion) applied to a determination of standing made in a proceeding under Colo. R. Civ. P. 120 because the determination was not a final judgment to which those doctrines could attach. Here, the State Court's judgment against the Debtor was made in the Rule 105 Proceeding. After the resolution of any pending appeals, it would be a final judgment to which the applicable doctrines of *Rooker-Feldman*, issue preclusion, and claim preclusion would apply.

ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT
Case No. 11-39881 HRT

Michaels, and does not find the report to be persuasive in its tone or in its conclusion, which appears to contradict the Debtor's own testimony that she signed an original Note and Deed of Trust in favor of the Original Lender. The Court has also reviewed the Debtor's Exhibit L, an affidavit dated January 27, 2014, in which U.S. Bank's servicer states that the original Note has been placed into the registry of the State Court, and the Debtor's Exhibit K, a letter dated July 11, 2014, in which U.S. Bank's servicer states that the original Note is "retained in a secured facility offsite" and may be viewed in Salt Lake City, Utah. Certainly, the original Note could not be in two places at the same time, but the Court cannot find that any inconsistency between the two documents leads inexorably to a conclusion of fraud. In the Court's view, the relevant facts and law support a conclusion that the probability of success is low. The first factor supports the Trustee's settlement of the Debtor's claims, as set forth in the Settlement Agreement.

### 2. Possible Difficulty in Collection of Judgment

If the Debtor's estate were to pursue the Debtor's claims and recover a judgment against U.S. Bank, any such judgment would not likely be difficult to collect. The second factor is either inapplicable or weighs against the Trustee's settlement of the Debtor's claims.

### 3. Complexity and Expense of Litigation

There can be no question that the Debtor's claims have been extensively litigated to date, with substantial expenses incurred. The Trustee testified to his understanding that U.S. Bank's attorney's fees exceeded $300,000. The Debtor has pursued litigation in multiple forums, thereby multiplying the associated time and expense of the claims. U.S. Bank has demonstrated a willingness and ability to mount a strong defense to each claim asserted. If the estate were to pursue the Debtor's claims, substantial additional expenditures of time and attorney's fees would be required.

The Trustee has testified that the estate has no resources with which to pursue litigation. No party has come forward to offer any litigation financing. The Debtor is willing to prosecute her claims herself, but while the Debtor is certainly a passionate advocate, she is not an attorney, which hinders her ability to pursue her claims effectively in the trial and appellate courts. The Debtor points to her success in obtaining injunctive relief against U.S. Bank's continuation of the Rule 120 Proceeding, but that preliminary ruling became moot when U.S. Bank abandoned the Rule 120 Proceeding, replacing it with the Rule 105 Proceeding. The Rule 105 Proceeding went forward in the State Court, and the Debtor did not prevail, nor has she prevailed in the cases she brought in the U.S. District Court.

The Debtor is currently pursing appeals in the Tenth Circuit Court of Appeals and in the Colorado appellate courts. The pendency of separate appeals in separate court systems, and the additional layer of claims that would be subject to the doctrines of *Rooker-Feldman*, res judicata

ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT
Case No. 11-39881 HRT

(claim preclusion), and collateral estoppel (issue preclusion) adds to the complexity and expense of any effort to pursue the Debtor's claims.

The Court finds that the Debtor's claims are complex and would be expensive to pursue, particularly against an able and well-funded defense effort. The estate has no resources available for litigation. The third factor supports the Trustee's settlement of the Debtor's claims, as set forth in the Settlement Agreement.

### 4. Interests of Creditors

*Kopexa Realty* directs the Court to consider "the interests of creditors in deference to their reasonable views." 213 B.R. at 1022. In the Debtor's case, which was administered as a no-asset case, creditors were told not to file a proof of claim unless specifically instructed to do so, and they have not yet been instructed to do so. The lack of filed claims identifying the Debtor's creditors hinders the Court's ability to take the creditors' views into account. But, the Debtor's schedules, signed under penalty of perjury, provide some evidence of the identity of the Debtor's creditors and the type and amount of debt owed to them. The Court notes that the Debtor's schedules list $239,382 owed to secured creditor Bank of America (U.S. Bank's predecessor in interest), $5,000 owed to priority unsecured creditor Internal Revenue Service, and $58,411owed to approximately 20 unsecured creditors.

The Objecting Creditor attended the evidentiary hearing but did not present his own testimony or evidence, relying instead on the Debtor's testimony and evidence. In his Objection (docket #85), he stated his opinion that the Debtor's claims had a great probability of success and should be pursued. While the Objecting Creditor is certainly entitled to his opinion about the merits of the Debtor's claims, the Court respectfully disagrees.

Regardless of the merit of the Debtor's claims, the estate has no resources with which to pursue the claims. In the absence of further pursuit of the claims, the estate will not receive any further recovery on them. Creditors, including the Objecting Creditor as well as the other creditors listed on the Debtor's schedules, would receive nothing.

If the Trustee were to abandon the Debtor's claims to the Debtor, then any recovery would be a windfall to the Debtor, who has obtained a discharge of all of her debts. The Debtor's discharge prohibits creditors from taking any action to collect their pre-petition debts from the Debtor personally. The Debtor argues that she would voluntarily pay all her creditors in full. She may be willing to make a voluntary distribution, but any such distribution would be outside the purview of this Court, would not likely be made according to the priorities and principles of distribution set forth in the Bankruptcy Code, and would not likely include any payment to Bank of America/U.S. Bank. The Debtor's voluntary payment plan may favor the interests of the Objecting Creditor, but the Court cannot find such a plan to be in the best

ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT
Case No. 11-39881 HRT

interests of the Debtor's creditors as a whole. This factor supports the Trustee's settlement of the Debtor's claims, as set forth in the Settlement Agreement.

### 5. Summary

The Court has considered each of the *Kopexa Realty* factors. Three of the factors favor the Trustee's settlement of the Debtor's claims. The claims have a low probability of success, asserting the claims would be complex and expensive, and the Settlement Agreement meets the best interests of creditors as a whole. One factor, the possible difficulty in collection of any judgment, is either inapplicable or weighs against approval of the Settlement Agreement, but that one factor has little weight, in the Court's opinion. Considering all the evidence before the Court, the Court finds that the Settlement Agreement sufficiently satisfies the *Kopexa Realty* factors.

## B. Other Arguments

The Debtor has made arguments that do not fall within the factors set forth in *Kopexa Realty*, and the Court has considered each of them in determining whether to approve the Settlement Agreement. The Court will discuss each argument separately.

The Debtor argues that her claims are not property of her estate because she acquired them more than 180 days after her petition date, citing 11 U.S.C. § 541(a)(5). Section 541(a)(5) applies to property the Debtor acquires within 180 days post-petition by inheritance, property settlement or divorce decree, or life insurance. That subsection has no applicability to the Debtor's claims. Instead, the Debtor's claims are included within the scope of § 541(a)(1), which provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case" wherever located and by whomever held. "[T]he scope of [ § ] 541 is broad and should be generously construed [;] ... an interest may be property of the estate even if it is novel or contingent." *Baer v. Jones (In re Montgomery)*, 224 F.3d 1193, 1194 (10th Cir. 2000) (quotations omitted). The Debtor's failure to pursue her claims pre-petition does not remove them from her estate, nor does her failure to list her claims on her bankruptcy schedules. The effect of the Debtor's failure to list her claims on her schedules is that the claims were not abandoned to the Debtor at the time her case was closed. As both the U.S. District Court and the State Court have held, the Debtor's claims have all along been property of the Debtor's estate.

The Debtor argues that the Settlement Agreement deprives her of her constitutional rights. The Court disagrees. The Debtor's claims are property of her bankruptcy estate, not as a result of any government "taking," but as a well-established result of the Debtor's choice to file a voluntary petition for relief under the Bankruptcy Code. And, the Debtor has been provided with due process: she was provided with notice of the Settlement Agreement and the opportunity

ORDER ON MOTION TO APPROVE SETTLEMENT AGREEMENT
Case No. 11-39881 HRT

to present evidence and argument to the Court, of which she took full advantage. *See Staker v. Wells Fargo Bank, N.A. (In re Staker)*, 550 Fed. Appx. 580, 583 (10th Cir. 2013).

    The Debtor objects to the provision in the Settlement Agreement allowing (but not requiring) U.S. Bank to file a proof of claim in the Debtor's case. U.S. Bank has always had the ability to file a proof of claim in the Debtor's case, should it choose to do so, once creditors are so instructed. The Settlement Agreement does not provide an expansion of U.S. Bank's rights in that regard.

    The Debtor argues that U.S. Bank lacks standing and committed fraud on the State Court. The State Court found to the contrary, holding that U.S. Bank possessed the Original Note and was entitled to proceed with its foreclosure efforts. The State Court's ruling may be overturned only by a Colorado appellate court with appropriate jurisdiction, and at any rate, the evidence before this Court does not persuade the Court that the State Court's rulings are incorrect.

    Although the Debtor and the Objecting Creditor believe that the Debtor's claims are worth far more than $10,000, no party has come forward to offer to pay more. In the absence of any likelihood of a competing bid, the Trustee is not required to conduct an auction. Federal Rule of Bankruptcy Procedure 6004(f)(1) authorizes both public auctions and private sales, and in this case the Court finds that a private sale is appropriate.

    Finally, the Debtor questions the Court's impartiality, given the involvement in the proceeding of counsel who previously served as a law clerk. The Court rejects this argument, for the reasons discussed in the Court's Order on Motion for Reconsideration (docket #95).

    The Court has considered each of the arguments made by the Debtor and by the Objecting Creditor, and finds them to lack merit. The Trustee exercised reasonable business judgment in entering into the Settlement Agreement, and in conducting its own, objective evaluation of the evidence before the Court, the Court finds that the Settlement Agreement should be approved.

## CONCLUSION

    For the reasons discussed above, the Court finds that the Settlement Agreement should be approved, and the Court will do so, by separate order.

Dated this __20th__ day of March, 2015.

    BY THE COURT:

    *Howard Tallman*
    Howard R. Tallman, Judge
    United States Bankruptcy Court